*FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No.  14-30222-E-13 |
| | ) | |
| CAMERON ELFORD, | ) | |
| | ) | |
| Debtor. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| DAVID SCHOONOVER, | ) | Adv. Proc. No.  20-2014 |
| | ) | Docket Control No.  BHS-1 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAMERON ELFORD, | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## MEMORANDUM OPINION AND DECISION
## MOTION FOR SUMMARY JUDGMENT

On May 27, 2020, David Schoonover, the "Plaintiff," filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 and supporting pleadings thereto.[1]  Dckts. 23-28.  On June 23, 2020, Cameron Elford, "Defendant-Debtor," filed an Opposition and related opposition pleadings.  The above relief is requested in Plaintiff's First Amended Complaint filed on February 19, 2020.  Dckt. 7.  Defendant-Debtor filed his Answer on March 26, 2020.  Dckt. 13.   No trial has been set in this Adversary Proceeding.

---

[1]  The Motion for Summary Judgment has been set for hearing on the notice required by Local Bankruptcy Rule 9014-1(f)(1). The Proof of Service states that the Motion and supporting pleadings were served on Debtor's Attorney, Chapter 13 Trustee, and Office of the U.S. Trustee on May 27, 2020.  By the court's calculation, 48 days' notice was provided.  28 days' notice is required.

**Overview of Complaint and Answer**

Plaintiff commenced this Adversary Proceeding for a determination that the obligations owing on the Amended Judgment on Verdict for $2,962,902.77 ("Amended Judgment on Verdict") in *David Schoonover et al. v. Cameron Elford and Lisa Pashanee*, California Superior Court Case, County of Sacramento, No. 34-2012-00131228 ("State Court Action"); and the order for restitution in the amount of $376,200.00 ("Restitution Order") in *In Matter of Cameron Elford*, Minor, California Superior Court Juvenile Case, County of Sacramento, No. 132824 ("Juvenile Case"), are nondischargeable in the Chapter 13 Case filed by Cameron Elford, 14-2014.

These monetary claims arise out of a head-on collision that occurred in July 2012, for which Defendant-Debtor pleaded no contest to felony drunk driving by a minor and for which corroborating testimony was provided by a passenger in the car being driven by the Defendant-Debtor at the time of the accident. The court reviews the evidence presented and the findings and conclusions in the State Court Action and the Juvenile Case in this Decision.

Defendant-Debtor's Answer begins with a general denial of "any allegation that Plaintiff has been, is, or will be damaged in the amount alleged, or any manner or sum whatsoever, or entitled to any recovery or remedy of any type whatsoever, be [sic] or any act, conduct, or omission of Defendant[-Debtor]." This general denial was made as to Plaintiff suffering any damages due to the head-on collision when Defendant-Debtor, a 17 year old, was driving while intoxicated, notwithstanding the Restitution Order for $376,200.00 having been entered six years earlier on April 25, 2014, and the State Court Judgment for $2,962,902.77 having been entered December 19, 2015, four and one-half years earlier. Both the Restitution Order and the State Court Judgment are expressly for the damages caused Plaintiff by Defendant-Debtor in the head-on collision of Defendant-Debtor's vehicle into Plaintiff's vehicle. [2]

The Answer continues, in which Defendant-Debtor asserts that he need not respond to the

---

[2] As is obvious in reading this Decision, the court has taken exception to Defendant-Debtor's liberally stated defenses, objections, and statements of law, which at the least border on violating the certifications arising under Federal Rule of Bankruptcy Procedure 9011. The court has closely considered such defenses, objections, and statements of law, notwithstanding that they could appear facially inapplicable, inaccurate, or unsupported by the evidence presented to the court.

allegations in the first seven paragraphs of the Amended Complaint. However, if required to respond, Defendant-Debtor denies such to the extent that they are an allegation of fact. These statements that no response is required, and if so, that each such allegation is affirmatively denied by Defendant-Debtor, includes the following allegations:

> Paragraph 1 of the Amended Complaint which alleges that Defendant-Debtor filed a voluntary Chapter 13 case – which Defendant-Debtor denies.

> Paragraph 2 of the Amended Complaint which alleges that Defendant-Debtor's voluntary bankruptcy case is pending in the Eastern District of California – which Defendant-Debtor denies .

> Paragraph 3 of the Amended Complaint which alleges that Defendant-Debtor is an individual – which Defendant-Debtor denies.

> Paragraph 4 of the Amended Complaint which alleges the federal court jurisdiction which arises under 28 U.S.C. § 1334, the exercise of that jurisdiction by bankruptcy judges, and the reference of all matters for which jurisdiction exists pursuant to 28 U.S.C. § 1334 – which Defendant-Debtor denies.

> Paragraph 5 of the Amended Complaint which alleges that this Adversary Proceeding is a core matter proceeding for which the bankruptcy judge issues all final orders and the judgment  – which Defendant-Debtor denies.

> Paragraph 6 of the Amended Complaint which alleges that Defendant is a resident of Sacramento County, California, which is situated within the Eastern District of California – which Defendant-Debtor denies.

Answer ¶¶ 1, 2, 3, 4, 5, and 6; Dckt. 13.

It is questionable as to how Defendant-Debtor can deny that he commenced the identified voluntary bankruptcy case and that he is a living, breathing individual. Also, the court cannot identify any good faith basis for Defendant-Debtor asserting that the determination of whether a discharge of these debts are proper arising under the Bankruptcy Code (11 U.S.C. §§ 523(a)(9) and 1328(a)(3) and (a)(4)) is not a core matter proceeding.

With respect to the allegations of federal court jurisdiction and whether this is a core matter proceeding, the U.S. Supreme Court has adopted Federal Rule of Civil Procedure 8 and Federal Rule of Bankruptcy Procedure 7008, which incorporates and expands Federal Rule of Civil Procedure 8 into bankruptcy adversary proceedings.

Defendant-Debtor's general denial does not appear to comply with the Federal Rule of Civil Procedure 8(b)(3) [emphasis added], which  allows for a general denial only when,

A party that **intends in good faith** to deny all the allegations of a pleading—**including the jurisdictional grounds**. . . ."

Federal Rule of Civil Procedure 8(b)(1)(B) further requires that the responding defendant "[m]ust . . . (B) admit or deny the allegations asserted against it by an opposing party." Defendant-Debtor has failed to comply with these provisions of Federal Rule of Civil Procedure 8(b).

Federal Rule of Bankruptcy Procedure 7012, which incorporates Federal Rule of Civil Procedure 12 into adversary proceedings, requires the Defendant-Debtor in this Adversary Proceeding to include in the responsive pleading "a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court." Fed. R. Bank. P. 7012(b). This is to document early on whether for non-core matters the parties consent to the bankruptcy judge issuing all final orders and judgment. Defendant-Debtor neglected to comply with this provision of Federal Rule of Bankruptcy Procedure 7012(b). See Answer, Dckt. 13.

**Admissions in Answer Relating to**
**The Restitution Order and The Amended Judgment on Verdict**

The First Amended Complaint includes the following Exhibits which are identified in the following paragraphs of the Complaint:

 Exhibit A, Restitution Order; Dckt. 27.

> 9. On July 22, 2012, Plaintiff suffered grievous injuries caused by a head-on traffic accident with Defendant. See, Exhibit "A," page 1: 13-15, Order Re: Restitution, Sacramento Superior Court, R. Steven Lapam, Judge of the Superior Court, April 25, 2014.

Complaint ¶ 9, Dckt. 7.

Exhibit B - The Amended State Court Judgment on Verdict; *Id.* at 16.

> 16. On December 9, 2015, *nunc pro tunc* to October 23, 2015, Judge Gerrit W. Wood of the Sacramento Superior Court issued an Amended Judgment on Verdict in case no. 34-2012-00131228 entitled *David Schoonover and Thuy Bich Van v. Cameron Taylor Elford and Lisa J. Pashanee*. See, Exhibit "B."

Complaint ¶ 16; *Id.*

In his Answer, Defendant-Debtor makes the following admissions and denials with respect to these two exhibits:

9. Answering paragraph 9 of the Complaint, Defendant admits only that the pleadings filed with the court are writings that speak for themselves. To the extent the allegations contained in Paragraph 9 of the Complaint differ from, are inconsistent with, or improperly characterized the content of these writings, those allegations are denied.

Answer ¶ 9; Dckt. 13.

16. Answering paragraph 16 of the Complaint, Defendant admits only that the pleadings filed with the court are writings that speak for themselves. To the extent the allegations contained in Paragraph 16 of the Complaint differ from, are inconsistent with, or improperly characterized the content of these writings, those allegations are denied.

Answer ¶ 16; *Id.*

Defendant-Debtor admits that the Restitution Order and Amended State Court Judgment are what they state they are and that they state what they state, denying only the allegations in the Amended Complaint that may misstate the terms in the Restitution Order and the Amended Judgment.

The court considers the Restitution Order and the Amended Judgment on Verdict in the discussion below.

**July 23, 2020 Final Hearing on
Motion for Summary Judgment**

On July 23, 2020, this court conducted the continued hearing on the Motion for Summary Judgment. In the court's posted tentative ruling the court addressed a number of issues with counsel for Defendant-Debtor concerning a number of the opposition grounds asserted. Counsel for Defendant-Debtor did not advocate for the positions asserted on those issues, but indicated that he acquiesced to the analysis in the tentative ruling. This court states its final ruling on those oppositions in this Decision. Counsel for the Defendant-Debtor did elaborate and provide oral argument for the opposition based on there being no criminal conviction of the Defendant-Debtor who was a minor at the time of the collision for purposes of 11 U.S.C. § 1328(a).

The court addressed at the hearing issues concerning the Motion, evidence, and applicable law with counsel for Plaintiff. The court requested/offered Plaintiff several opportunities to file supplemental pleadings clearly tying together the evidence and legal grounds into a simple (as the court described it) "see Spot, see Spot run" analysis of the facts not in *bona fide* material dispute and the applicable law connecting the dots showing that Plaintiff prevails. After addressing it several

times, counsel for Plaintiff advised the court that all of the information is in the existing pleadings and unless the court could explain further what it would want, Plaintiff believes that what has been filed properly provides the undisputed facts and law for the court to rule on the Motion for Summary Judgment. With no supplemental pleadings to be filed, the court took the Motion under submission.

The court notes that at the hearing it addressed with both counsel the assertion of Defendant-Debtor that there was no criminal conviction due to Defendant-Debtor being a minor. When asked about the evidence in the record and the law relating to such alleged "criminal conviction," each counsel's response was similar: "well, it is understood that . . . ." Neither counsel pointed the court to evidence of a criminal conviction. Defendant-Debtor's counsel did direct the court to four (4) lines in Defendant-Debtor's twenty-two (22) page Memorandum of Points and Authorities, which states:

> However, adjudicated within Welfare and Institutions Code sections 602 and 203, the actions by the minor "shall not be deemed a conviction of a crime for any purpose...nor shall...be deemed a criminal proceeding."

Memorandum of Points and Authorities, p. 5:21-24; Dckt. 32. No quoting of these California statutory provisions, interpreting case law, or secondary treatise have been provided by the Parties, nor an explanation as to how these statutes apply. However, being provided with a reference to the law, this court developed the analysis thereon in this Decision.

### REVIEW OF MOTION, OPPOSITION, AND RESPECTIVE SUPPORTING PLEADINGS

**Motion for Summary Judgment
and Supporting Pleadings**

On May 27, 2020, Plaintiff filed the instant Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056. Dckt. 23. Plaintiff asserts that his claims should be nondischargeable because the findings in support of the final Amended Judgment on Verdict and the Restitution Order are sufficient to show that some or all of the debts owed by Defendant-Debtor to Plaintiff are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(9), 1328(a)(3), and 1328(a)(4).

Specifically, Plaintiff argues that the court found sufficient facts that demonstrate Defendant-Debtor should be denied discharge of both the debt owed by the Restitution Order in the amount of

$376,200.00 and the December 9, 2015 *nunc pro tunc* to October 23, 2105 Amended Judgment on

Verdict in the amount of $2,962,902.77.

**Summary of Grounds for Denial of Discharge**

Plaintiff's fourteen-page Motion includes the points and authorities, as well as the legal

argument relating thereto.[3]    The Motion lays out that Plaintiff was injured in a car accident on

July 22, 2012, when the vehicle driven by Defendant-Debtor, who was seventeen (17) years of age

at the time, struck Plaintiff's vehicle head-on.  Plaintiff asserts that:

A.    Defendant-Debtor was intoxicated at the time of the head-on accident from consuming a large quantity of alcohol;

B.    Defendant-Debtor admitted to felony drunk driving;

C.    Defendant-Debtor pled no contest in juvenile court to felony driving under the influence with injuries in violation of California Vehicle Code § 23153(a);

D.    Defendant-Debtor was ordered to pay restitution in the amount of $376,200.00 in connection with the plea of no contest to the felony;

E.    That a civil trial was conducted and an Amended Judgment on the Verdict was entered awarding Plaintiff $2,962,902.77 in damages for the injuries caused in the July 22, 2012 head-on collision caused by Defendant-Debtor driving while intoxicated.

Motion, p. 2:1-16; Dckt. 23.

Plaintiff has filed documentary evidence and testimony in support of the Motion For

Summary Judgment consisting of the following:

---

[3]  Local Bankruptcy Rule 9004-2(c) and Rule 9014-1(d)(1) and (d)(4) provides that the motion, points and authorities, each declaration, and the exhibits (which may be combined into one exhibit document to be filed) shall be filed as separate documents, with the exception that if a combined motion and points and authorities is six pages or less in length, it can be combined into one document (a "mothories").  These Local Rules recognize that a simple combined motion and points and authorities can be properly filed to simplify the process, but for more complex pleadings, intertwining grounds stated with particularity (as required by Federal Rule of Civil Procedure 7(b) and Federal Rules of Bankruptcy Procedure 7007 and 9013) with citations, quotations, legal arguments, conjecture, and speculation can often create a confusing mess.

Here, Plaintiff self-excepted himself from these Local Rules, filing a fourteen (14) page mothories.  Dckt. 23.  Though more than double in length permitted by the Local Bankruptcy Rules, after considering the organization of the pleading, the twenty-two (22) page Memorandum in Opposition filed (Dckt. 32), the arguments presented, and oral argument conducted, the court waives the mothories page limitation for this one motion, concluding that such is in the best interests of each of the two parties.

A.    Declaration of Plaintiff; Dckt. 25.

B.    The following Exhibits as documentary evidence:

1.    Exhibit A - Restitution Order in the amount of $376,200.00.  Dckt. 27 at 3. This is the same Restitution Order that is attached as Exhibit A to the Amended Complaint.

2.    Exhibit B - Superior Court, Juvenile, Victim Restitution Notice addressed to Plaintiff-Debtor stating that $376,200.00 in restitution has been ordered to be paid by the Defendant-Debtor and Defendant-Debtor's mother.  *Id.* at 10.

3.    Exhibit C - County of Sacramento Probation Department Statement of Loss Form that is completed and signed by the Plaintiff.  *Id.* at 11.

4.    Exhibit D - the Amended Judgment on Verdict for $2,962,902.77.  *Id.* at 12. This is the same Amended Judgment on Verdict that is attached as Exhibit B to the Amended Complaint.

5.    Exhibit E - Plaintiff's Requests for Admissions in the State Court Action.  *Id.* at 16.

6.    Defendant[-Debtor]'s Responses to the Requests for Admissions in the State Court Action.  *Id.* at 22.

The Declaration of Plaintiff includes his identification of the Restitution Order and the Amended Judgment on Verdict that he received in the Juvenile Court and the State Court Action proceedings.  Declaration, ¶¶ 4, 10; Dckt. 25.  Plaintiff provides little, if any, testimony based on his personal knowledge, but substantially says what he hears the Restitution Order and Amended Judgment on Verdict say when he reads them.  Declaration ¶¶ 4, 5, 6, 7, 8, 9; *Id.*

Plaintiff then identifies the Probation Statement of Loss form filed as Exhibit C, testifying that he completed it.  Declaration, ¶ 8; *Id.*

In Paragraph 11 of the Declaration, Plaintiff attempts to identify the Requests for Admission and the Defendant-Debtor's Responses that were made in the State Court Action.  Nothing in the Declaration indicates how Plaintiff has any personal knowledge concerning the Requests for Admission that were prepared by or the Defendant-Debtor's Responses that were or received by Plaintiff's attorneys in the State Court Action.

Defendant-Debtor raised evidentiary objections under both the Federal Rules of Evidence and the California Evidence Code (without offering a basis for the California Evidence Code controlling in federal court).  The objections were stated to be hearsay objections to all of Plaintiff's

8

1    Exhibits.  In response, Plaintiff filed the Declaration of Glenn Guenard, Esq., the attorney for

2    Plaintiff in the State Court Action.  Declaration, Dckt. 36.  Mr. Guenard testifies that he propounded

3    the Requests for Admissions, Exhibit E, and that a copy of the Responses made by Defendant-

4    Debtor (which necessarily would be returned to the attorney who propounds the Requests for

5    Admission) are Exhibit F.  While not responsive to a "hearsay objection," it does address any issue

6    of authentication of Exhibits E and F, which Defendant-Debtor's counsel stated that he really meant

7    to make in stating the hearsay objections.  Declaration, ¶¶ 4, 5; Dckt. 36.  Mr. Guenard also

8    identifies Exhibit D as the Amended Judgment on Verdict that Plaintiff was awarded in the State

9    Court Action for which Mr. Guenard was Plaintiff's State Court attorney.

10    The court overrules the "hearsay" objections made by Defendant-Debtor, as well as the

11    "authentication" clarified objections at the hearing.  Plaintiff has sufficiently authenticated these

12    documents.

13    Additionally, Defendant-Debtor admitted that the Restitution Order and the Amended

14    Judgment on Verdict were such that were awarded Plaintiff against Defendant-Debtor in the State

15    Court.  The Defendant-Debtor's only "denial" with respect to the Restitution Order and Amended

16    Judgment on Verdict were to statements about them by Plaintiff which Defendant-Debtor deemed

17    inaccurate.  Defendant-Debtor specifically admitted that the Restitution Order and the Amended

18    Judgment on Verdict "are writings that speak for themselves. . . ."  Answer ¶¶ 9, 14, 16, 17, and 18;

19    Dckt. 13.

20    With the reply documents, Plaintiff filed a 42-page transcript as Exhibit G.  Dckt. 37.  This

21    is stated to be as a "reply" to Defendant-Debtor's assertion that Plaintiff failed to present evidence

22    in support of the Motion.  This Exhibit G is not offered as a reply to new evidence submitted in

23    opposition to the Motion, but appears to merely be evidence that would have been included with the

24    evidence when the Motion was filed with the court.  As such, the court does not consider Exhibit G

25    in ruling on Plaintiff's Motion for Summary Judgment as it is not in "reply" to any evidence

26    presented by Defendant-Debtor.

27    ///

28    ///

**Statutory Grounds Asserted for the Restitution Order**
**and Amended Judgment Being Nondischargeable**

Plaintiff asserts that the $376,200.00 Restitution Order is nondischargeable pursuant to 11 U.S.C. § 1328(a)(3) and (a)(4), which provide:

§ 1328. Discharge

> (a) Subject to subsection (d), . . ., the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
> . . .
>
> (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or
>
> (4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

Plaintiff asserts that the $2,962,902.77 Amended Judgment on Verdict is nondischargeable pursuant to 11 U.S.C. § 1328(a)(4) (stated above) and 11 U.S.C. § 523(a)(9), which provides:

§ 523. Exceptions to discharge

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> . . .
> (9) for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance; . . . .

**Defendant-Debtor's Opposition**
**and Supporting Pleadings**

The Defendant-Debtor's Opposition to the Motion is stated in the Memorandum in Support of Opposition to Motion for Summary Judgment. Dckt. 32. In the twenty-two (22) pages of opposition, Defendant-Debtor asserts several grounds by which not only should the Motion be denied, but asserts that Plaintiff is not entitled to any relief in this Adversary Proceeding.

Defendant-Debtor elected not to provide any declarations testifying to any facts.

Pursuant to Federal Rule of Evidence 201, Defendant-Debtor has filed a Request for Judicial Notice (which is one hundred fifty-six (156) pages in length) of the following:

A.    Exhibit 1 - Lisa Pashanee's (Co-Defendant in the State Court Action) Voluntary Chapter 7 Bankruptcy Petition. Dckt. 30 at 4.

///

B.    Exhibit 2 - Defendant-Debtor's Voluntary Chapter 13 Bankruptcy Petition, Schedules, Statement of Financial Affairs, and related documents. *Id.* at 51. [4]

C.    Exhibit 3 - Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors for Defendant-Debtor's bankruptcy. *Id.* at 92.

D.    Exhibit 4 - Plaintiff's Motion for Relief From the Stay in Defendant-Debtor's bankruptcy case. *Id.* at 95.

E.    Exhibit 5 - Plaintiff's Motion to Dismiss Defendant-Debtor's bankruptcy case. *Id.* at 100.

F.    Exhibit 6 - Civil Minutes for hearing on Plaintiff's Motion For Relief From the Stay. *Id.* at 104.

G.    Exhibit 7 - Civil Minutes for hearing on Plaintiff's Motion to Dismiss Defendant-Debtor's bankruptcy case. *Id.* at 107.

H.    Exhibit 8 - Order Denying Motion to Dismiss Defendant-Debtor's bankruptcy case. *Id.* at 110.

I.    Exhibit 9 - Order granting Plaintiff's Motion for Relief From the Automatic Stay to prosecute the State Court Action. *Id.* at 112.

J.    Exhibit 10 - Order Confirming Defendant-Debtor's Chapter 13 Plan. *Id.* at 114.

K.    Exhibit 11 - Notice to Debtor of Completed Plan Payments and of Obligation to File Documents. *Id.* at 117.

L.    Exhibit 12 - Notice of Filing Trustee's Final Report and Account and of Order Fixing Deadline for Objecting Thereto. *Id.* at 125.

M.    Exhibit 13 - Complaint to Determine Dischargeability (the original complaint filed in this Adversary Proceeding). *Id.* at 127.

N.    Exhibit 14 - Plaintiff's Amended Proof of Claim No.1-2. *Id.* at 145.

O.    Exhibit 15 - Plaintiff's Amended Proof of Claim No. 1-3. *Id.* at 149.

Dckt. 30.

Defendant-Debtor asserts several different legal and factual theories why either Defendant-Debtor prevails on all claims, or why there is a *bona fide* dispute concerning material facts that precludes the court from granting summary judgment at this time.

---

[4] Defendant-Debtor asks the court to take notice of his having filed bankruptcy case 14-30222; the very same bankruptcy case that Defendant-Debtor denied filing in paragraph 1 of his Answer (which denials are subject to the certifications arising under Federal Rule of Bankruptcy Procedure 9011). The court is placed in a credibility dilemma of whether Defendant-Debtor's denial of filing the bankruptcy case is true or whether Defendant-Debtor's request for the court to take notice of Exhibit 2 indicating that Defendant-Debtor filed bankruptcy is actually true.

Defendant-Debtor begins with the assertion that California Welfare and Institutions Code §§ 602 and 204 precludes there from being any "criminal conviction" of the Defendant-Debtor because he was a 17 year old minor. Thus, there can be no restitution ordered as part of a criminal conviction. (While long on federal law for juvenile proceedings outside of California, the Defendant-Debtor's opposition is devoid of any citations to California criminal law on the point.)

Defendant-Debtor's second knock-out blow is asserted to be that the Complaint in this Adversary Proceeding was filed years after the deadline for filing actions on nondischargeable claims as provided for in 11 U.S.C. § 523(c) and Federal Rule of Bankruptcy Procedure 4007(c) expired.

If Plaintiff is able to clear those hurdles, Defendant-Debtor states that there is a triable issue of fact for this federal court as to whether Defendant-Debtor was legally intoxicated at the time the vehicle he was driving crashed head-on into Plaintiff's vehicle. Defendant-Debtor appears to argue that notwithstanding any final non-bankruptcy court judgments or order, the bankruptcy judge is to conduct a trial *de novo* on whether Defendant-Debtor was legally intoxicated at the time of the accident. This argument is premised in part on Defendant-Debtor's reading of Ninth Circuit law as requiring that any non-bankruptcy court judgment must be entered prior to the commencement of the bankruptcy case for Plaintiff to seek a determination that damages for his injuries are nondischargeable. The Ninth Circuit authority cited by Defendant-Debtor is the single judge dissent in *Stackhouse v. Hudson (In re Hudson)*, 859 F.2d 1418, 1419 (9th Cir. 1988) (dis. opn. of Wiggins, J.).

Defendant-Debtor asserts that even if the court considers Defendant-Debtor's admissions as to consuming alcohol within one hour of the accident, "there is no evidence that the accident was not purely caused by negligent, inexperienced driving by a minor, as the alcohol had not had time to metabolize before the accident occurred." Memorandum, p. 13:5-9; Dckt. 32.

## REVIEW OF SUMMARY JUDGMENT LAW

In an adversary proceeding, summary judgment is proper when "[t]he movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. The key inquiry in a motion

1  for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P.

2  56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

3  248–50 (1986); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE

4  § 56.11[1][b] (3d ed. 2000). "[A dispute] is 'genuine' only if there is a sufficient evidentiary basis

5  on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is

6  'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New*

7  *Form, Inc. (In re Barboza )*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson v. Liberty Lobby,*

8  *Inc*., 477 U.S. at 248 (1986).

9       The party moving for summary judgment bears the burden of showing the absence of a

10 genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To support

11 the assertion that a fact cannot be genuinely disputed, the moving party must "cit[e] to particular

12 parts of materials in the record, including depositions, documents, electronically stored information,

13 affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials."

14 Fed. R. Civ. P. 56(c)(1)(A), incorporated by Fed. R. Bankr. P. 7056.

15      In response to a sufficiently supported motion for summary judgment, the burden shifts to

16 the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial.

17 *Barboza*, 545 F. 3d at 707, citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th

18 Cir. 2002). The nonmoving party cannot rely on allegations or denials in the pleadings but must

19 produce specific evidence, through affidavits or admissible discovery materials, to show that a

20 dispute exists. *Id.* (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). The

21 nonmoving party "must do more than simply show that there is some metaphysical doubt as to the

22 material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

23      In ruling on a summary judgment motion, the court must view all of the evidence in the light

24 most favorable to the nonmoving party. *Barboza*, 545 F.3d at 707 (citing *County. of Tuolumne v.*

25 *Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001)). The court "generally cannot grant

26 summary judgment based on its assessment of the credibility of the evidence presented." *Agosto*

27 *v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage [,] the judge's function is not

28 himself to weigh the evidence and determine the truth of the matter[,] but to determine whether there

1    is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

2    **DISCUSSION AND RULING**

3    **Defendant-Debtor's Assertion That Plaintiff Must Be
     Denied Relief Because Filing of the Complaint is Not Timely and
4    Relief is Barred is Not Correct**

5    The court begins with Defendant-Debtor's assertion that since the Complaint in this

6    Adversary Proceeding was filed on February 7, 2020, it is untimely. It is asserted that the deadline

7    for filing complaints for determination of nondischargeability of debts in connection with

8    Defendant-Debtor's bankruptcy case expired on January 20, 2015.[5] Therefore, Defendant-Debtor

9    wins and the legal match is over.

10   Unfortunately, the law is not consistent with this assertion. Defendant-Debtor's punch not

11   only misses the mark, but it is so clearly not "warranted by existing law or by a nonfrivolous

12   argument for the extension, modification, or reversal of existing law or the establishment of new

13   law"[6] that it comes around and hits the Defendant-Debtor on his own chin. Given the clear law that

14   applies, it is difficult to see how this assertion "[i]s not being presented for any improper purpose,

15   such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."[7]

16   Defendant-Debtor directs the court to read 11 U.S.C. § 523(c)(1) to clearly show that the

17   Complaint in this Adversary Proceeding is not timely. When one reads 11 U.S.C. § 523(c)(1), one

18   sees that it states a very limited grounds for nondischargeability of debt for which there is a deadline

19   for seeking relief from the court:

20   (c)
21   (1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be **discharged from a debt** of a kind **specified in paragraph (2), (4), or (6) of subsection (a)** of this section, **unless**, on **request of the creditor** to whom such debt
22   is owed, and after notice and a hearing, **the court determines** such debt to be **excepted** from discharge **under paragraph (2), (4), or (6)**, as the case may be, of
23   subsection (a) of this section.

24   11 U.S.C. § 523(c) [emphasis added].

25

26   [5]   14-30222; Notice of Chapter 13 Bankruptcy Case, Meeting of Creditor and Deadlines, Dckt. 9.

27   [6] Fed. R. Bankr. P. 9011.

28   [7] *Id.*, (b)(1).

14

11 U.S.C. § 523(c)(1) relates only to debts excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) for fraud; 11 U.S.C. § 523(a)(4) for defalcation in a fiduciary capacity, embezzlement, or larceny; or 11 U.S.C. § 563(a)(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.  As is obvious from the face of the Amended (and Original) Complaint, relief is not sought pursuant to any of these specified provisions and thus 11 U.S.C. § 523(c)(1) is not  applicable to the First Amended Complaint.

Moving to Federal Rule of Bankruptcy Procedure 4007, the U.S. Supreme Court has expressly provided for both the claims for nondischargeabilty on the grounds listed in 11 U.S.C. § 523(c) and then for all other claims that a debt is nondischargeable, which Rule states in pertinent part.

Rule 4007. Determination of Dischargeability of a Debt
(a) Persons Entitled To File Complaint. A debtor or any **creditor may file a complaint** to obtain a **determination of the dischargeability of any debt.**

(b) Time for Commencing Proceeding Other Than Under §523(c) of the Code. **A complaint** *other than under §523(c)* **may be filed at any time.** A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.

Fed. R. Bankr. P. 4007(a) and (b) [emphasis added].  Thus, the rule is that a complaint to determine the dischargeability of any debt may be filed at any time, except for those grounds as expressly specified in 11 U.S.C. § 523(c).

As shown by the Bankruptcy Code Section and the Federal Rule of Bankruptcy Procedure cited by Defendant-Debtor, the claims for nondischargeabilty pursuant to 11 U.S.C. § 523(a)(9) and 11 U.S.C. § 1328(a)(3) and (a)(4) are not time-barred and this adversary proceeding was timely commenced by Plaintiff.

**Defendant-Debtor's Assertion That Plaintiff Must Have Obtained**
**His Judgment Before the Defendant-Debtor Filed His Bankruptcy Case**
**is Not Supported by the Existing Ninth Circuit Published Decision**

Defendant-Debtor asserts that a triable issue of fact exists because the State Court Judgment determining almost $3,000,000.00 of damages were suffered by Plaintiff in the accident caused by Defendant-Debtor was not entered until after the current bankruptcy case was filed.  Memorandum, pp. 10:9-27, 11:1-28, 12:1-25; Dckt. 32.  Defendant-Debtor begins this assertion with quoting the

provisions of 11 U.S.C. § 523(a)(9), stating:

> A genuine issue of triable fact exists as to the first cause of action which seeks to prevent discharge of its State Court Judgment pursuant to Title 11 of the United States Code section 523(a)(9), which prevents discharge of a debt "to any entity, **to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor** wherein liability was incurred by such debtor as a result of the operation of a motor vehicle while legally intoxicated[.]"

Memorandum, p. 10:18-27; Dckt. 32.

Then, citing to the single judge dissent in *Stackhouse v. Hudson (In re Hudson),* 859 F.2d 1418, 1419 (9th Cir. 1988) (dis. opn. of Wiggins, J.), Defendant-Debtor argues that established Ninth Circuit law requires there to be a pre-petition non-bankruptcy court judgment if 11 U.S.C. § 523(a)(9) is to apply to an obligation for damages caused by a debtor from driving a vehicle while intoxicated:[8]

> Because the lawsuit commenced after the bankruptcy was filed, and the literal wording of the statute holds that failure to commence an underlying civil action against the debtor prior to the filing of the petition precludes determination that the debt is nondischargeable, a triable issue of fact exists. (*In Re Jackson* (Bankr. N.D. Ohio 1987) 77 B.R. 120; *Hudson II, id.*)

Memorandum, p. 12:19-24; Dckt. 32.[9]

By citing to the dissent in *Stackhouse v. Hudson* in advocating his position, Defendant-Debtor ignores the majority decision in *Stackhouse v. Hudson* which is the established law in the Ninth Circuit. Defendant-Debtor "missing," and not citing to the court, the published majority decision in *Stackhouse v. Hudson,* failed to present to the court the controlling Ninth Circuit Court of Appeal established law which states:

> [T]he dispositive issue on appeal is whether **11 U.S.C. § 523(a)(9)**, requires that a creditor obtain judgment for damages against a debtor prior to the debtor's filing for bankruptcy as a prerequisite to having declared nondischargeable a debt arising from damages caused by drunk driving. **We hold that a prepetition judgment is not required, and reverse the decision of the BAP**.

---

[8] By the very nature of being a dissent, the "authority" cited by Defendant-Debtor necessarily is not the law established by the majority decision in *Hudson*. The majority did not adopt the "avoid drunk driving liability by filing bankruptcy before the state court judge can get the judgment entered" defense that Defendant-Debtor advocates.

[9] The reference to "*Hudson II*" in Defendant-Debtor's Opposition is a citation to *Stackhouse v. Hudson (In re Hudson),* 859 F.2d 1418, 1419 (9th Cir. 1988), and not a subsequent decision.

16

. . .

We think it evident that Congress sought three objectives when it adopted § 523(a)(9): (1) to **deter drunk driving**; (2) to **ensure that** those who caused injury by driving drunk did **not escape civil liability through the bankruptcy** laws; and (3) to **protect victims of drunk driving**. The interpretation of the statute adopted by the BAP [requiring the judgment to be entered prior to the case being filed, and if not, 11 U.S.C. § 523(a)(9) could never apply]  advances none of these goals. . .

[T]he purpose of the non-dischargeability section in general was to remove from the debtor's capacity to discharge certain classes of debts arising from practices Congress deemed so pernicious that bankruptcy should not be able to insulate the debtor from their payment. . .

The leading bankruptcy commentator is in accord. "A creditor who has not had reasonable time to seek a judgment in state court prior to the debtor's bankruptcy should be granted leave by the bankruptcy court to diligently prosecute his claim in state court." 3 Collier on Bankruptcy para. 523.18A at 523-135 n.2 (1988).[10]

. . .

Since the enactment of § 523(a)(9), bankruptcy courts have consistently held, and litigants relying on those opinions have assumed, that its language includes claims against drunk-driver bankrupts reduced to judgment after the commencement of the bankruptcy. We are not inclined to disturb this consistent body of law in which Congress apparently acquiesces.

The decisions of BAP and the bankruptcy court [both requiring that the judgement be obtained pre-petition or a creditor could not seek relief pursuant to 11 U.S.C. § 523(a)(9)] are REVERSED. We REMAND for further proceedings consistent with our opinion.

*Stackhouse v. Hudson (In re Hudson),* 859 F.2d 1418, 1419, 1423- 1424 (9th Cir. 1988).

As with some other parts of the Opposition, the court is hard pressed to see how this assertion is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  Additionally, how this assertion " is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

**Application of the Full Faith and Credit Statute,**
**and the Doctrine of *Res Judicata* and**
**Related Doctrine of Collateral Estoppel**

Defendant-Debtor appears to contend that any plaintiff asserting the right to relief pursuant to 11 U.S.C. § 523(a)(9) who obtains a post-petition judgment against the debtor in a non-

---

[10]  Which is exactly what happened, with Plaintiff having obtained relief from the stay in Defendant-Debtor's bankruptcy case to prosecute to final judgment his claims arising out of the accident.

bankruptcy court must then prosecute a separate, independent federal action under 11 U.S.C. § 523(a)(9) and retry each and every legal issue and factual determination. Defendant-Debtor asserts that failure of the court to require a retrial of the issues if the non-bankruptcy court judgment was entered post-petition would render the statute, 11 U.S.C. § 523(a)(9), nugatory.

Though Plaintiff does not address the Doctrine of *Res Judicata* in the Motion or the Reply, Defendant-Debtor's assertion runs contrary to basic legal Doctrine of *Res Judicata* and the sub-doctrine of Collateral Estoppel. Additionally, it runs afoul of the provisions of 28 U.S.C. § 1738 which create a statutory Full Faith and Credit Act for state court judgments in federal court which is similar to the Constitutional Full Faith and Credit given that must be given by the court of one state to a judgment issued by a court of every other state. U.S. Const. Art. IV, Sec. 1.

As stated by the court in *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001):

> Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 84 L. Ed. 2d 274, 105 S. Ct. 1327 (1985)).

Collateral Estoppel is a variant of the fundamental *Res Judicata* Doctrine. The Ninth Circuit Court of Appeals addressed the modern application of this Doctrine in *Robertson v. Isomedix, Inc. (In re International Nutronics)*, 28 F.3d 965 (9th Cir. 1994). The court considers four factors in determining whether *Res Judicata* applies,

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 970, citing *Clark v. Bear Sterns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

In describing the five elements for Collateral Estoppel under California law, the Ninth Circuit Court of Appeals stated,

> Under California law, collateral estoppel only applies if certain threshold requirements are met:

First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001).

*Cal-Micro, Inc. v. Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003). The party asserting collateral estoppel bears the burden of establishing these requirements. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001). *Id.* at 1245. The application of collateral estoppel is greater than merely the convenience of the court, but is required of the federal courts to respect and give effect to state court judgments.

The California Supreme Court discussed the Doctrine of Collateral Estoppel *in Murray v. Alaska Airlines, Inc.* , 50 Cal. 4th 860, 879 (2010), stating:

We find that the public policies underlying the doctrine of collateral estoppel will best be served by applying the doctrine to the particular factual setting of this case. Those policies include conserving judicial resources and promoting judicial economy by **minimizing repetitive litigation**, **preventing inconsistent judgments which undermine the integrity of the judicial system**, and **avoiding the harassment of parties through repeated litigation**. (*Allen v. McCurry* (1980) 449 U.S. 90, 94; *Montana v. United States* (1979) 440 U.S. 147, 153–154; *Sims, supra*, 32 Cal.3d at pp. 488–489; *Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 878.)

The party "asserting collateral estoppel carries the burden of proving a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *In re Lambert*, 233 Fed. Appx. 598, 599 (9th Cir. 2007). If the Court has a reasonable doubt as to what was actually decided by the prior judgment, it will refuse to apply preclusive effect. *Id.*

**Prior Relief From the Automatic Stay Granted**
**to Allow Prosecution of the State Court Action to Final Judgment**
**For Claim Based on Defendant-Debtor Driving While Intoxicated**

On December 9, 2014, the Hon. Christopher M. Klein (the judge to whom the Defendant-Debtor's bankruptcy case and this Adversary Proceeding were previously assigned) entered an order modifying the automatic stay:

[t]o allow David Schoonover [Plaintiff] and Thuy Bich Van, and its agents, representatives and successors, to pursue the Sacramento Superior Court Case action (Case No. 34-2012-00131228) to determine the amount of the claim and/or to pursue collection of the liquidated claim against Debtor's third-party insurance carrier.

14-30222; Order, Dckt. 49.

The findings of fact and conclusions of law of the court in granting relief from the stay include the following stated in the Civil Minutes from the December 9, 2014 hearing on the motion for relief from the stay:

> From the pleadings, the court concludes that Creditors are requesting relief from the stay to liquidate damages for Personal Injuries received in an auto **accident in which Debtor has admitted he was driving under the influence of alcohol** . . . . Dkt. 26.
>
> The **court has no opposition to Creditor pursuing the claim to determine the amount of the claim**. The court also does not oppose **granting relief from stay for Creditor to pursue collection of the claim against Debtors insurance carrier**, if any. However, the court does not find cause to grant relief from the stay to permit Creditors to pursue any liquidated claim resulting from the state court case against Debtor personally. The court shall issue a minute order terminating and vacating the automatic stay to allow Creditors, and their agents, representatives and successors, to pursue the subject state court action (Case No. 34-2012-00131228) to determine the amount of the claim and/or to pursue collection of the liquidated claim against Debtors third-party insurance carrier.

*Id.*; Civil Minutes, Dckt. 44 (emphasis added).

The bankruptcy court modified the automatic stay to expressly have the issue of damages asserted to have been caused by Defendant-Debtor's driving of a vehicle while intoxicated adjudicated to final judgment in State Court. That Amended Judgment on Verdict having been obtained, it is now presented to this court for the application of the Full Faith and Credit statute, as well as the Doctrines of *Res Judicata* and Collateral Estoppel applied.

**Defendant-Debtor as a Ward of the Court and**
**No Restitution Included in a Criminal Conviction**
**For Application of 11 U.S.C. § 1328(a)(3)**

Defendant-Debtor has opaquely argued, without any clear analysis of California law or case law precedent, that Defendant-Debtor was a ward of the court, being only 17 years of age, and that precluded any criminal conviction. Plaintiff countered only with "it is understood" that such would be a criminal conviction. The Parties leave it to the court to uncover the legal truth.

Defendant-Debtor does direct the court to California Welfare and Institutions Code § 602 and § 203. The court begins with Welfare and Institutions Code § 602(a), which provides:

> § 602. Persons subject to jurisdiction of juvenile court and to adjudication as ward for violation of law or ordinance defining crime

20

(a) Except as provided in Section 707, **any minor** who is between 12 years of age and **17 years of age**, inclusive, **when he or she violates any law** of this state or of the United States or any ordinance of any city or county of this state **defining crime** other than an ordinance establishing a curfew based solely on age, is **within the jurisdiction of the juvenile court**, which may adjudge the minor to be a ward of the court.

Thus, on its face, it appears that the "ticket" to getting into Juvenile Court is being a minor who "violates any law of this state [California]."

Moving to California Welfare and Institutions Code § 203 referenced by the Defendant-Debtor, it provides (emphasis added):

§ 203. Order adjudging minor ward of court as not constituting conviction; Noncriminal nature of proceeding

An **order adjudging a minor to be a ward** of the juvenile court shall **not be deemed a conviction of a crime** for any purpose**, nor shall a proceeding in the juvenile court be deemed a criminal proceeding**.

In another section of the Welfare and Institutions Code, it provides that restitution may be ordered to be paid by a minor when the court finds the minor to be a person described in Welfare and Institutions Code § 602 (one who has violated a law that defines a crime). Welfare & Inst. § 730.6(b), (c), (h). A review of the annotations to Welfare and Institutions Section 203 discloses decades of cases stating that as a matter of California law, proceedings in a juvenile court to declare a minor the ward of a court are not criminal proceedings, but civil in nature. These cases include:

*Leroy T. v. Workmen's Comp. Appeals Bd.*, 12 Cal. 3d 434, 438 (1974) [emphasis added].

This philosophy is reflected, in part, in the terminology employed in the juvenile system. Welfare and Institutions Code section 503 [predecessor to current § 203] commands that "**[an] order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose**, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." California decisions reflect the view that juvenile court proceedings are in the nature of guardianship proceedings (*In re Bacon* (1966) 240 Cal.App.2d 34, 45; *In re Schubert* (1957) 153 Cal. App.2d 138, 141 and are concerned primarily with the welfare of the juvenile. (*In re Florance* (1956) 47 Cal.2d 25, 28; *In re Colar* (1970) 9 Cal.App.3d 613, 615.) They also instruct that **adjudications of juvenile wrongdoing are not "criminal convictions**" (*In re Magnuson* (1952) 110 Cal.App.2d 73, 74) and that the commitment of a ward to the Youth Authority is not a "sentence." (*People v. Wilkins* (1967) 251 Cal.App.2d 823, 829.)

*In re Gabriel T.*, 3 Cal. App. 5th 952, 961-962, 207 (5th DCA 2016) [emphasis added].

"Although confinement, fines, and fees imposed upon a ward of the juvenile court

may be penal in nature and premised upon a finding of criminal misconduct, **juvenile adjudications of wardship are not criminal convictions.** [Citations.]" *(Egar v. Superior Court* (2004) 120 Cal.App.4th 1306, 1308.) Pursuant to Welfare and Institutions Code section 203, "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."

. . .

Here, the state court construction penalty under Government Code section 70372, subdivision (a)(1), is collected for criminal offenses. **Under Welfare and Institutions Code section 203, however, juvenile adjudications of wardship are deemed neither criminal convictions nor criminal proceedings**. (*In re Derrick B.* (2006) 39 Cal.4th 535, 540; *People v. Dotson* (1956) 46 Cal.2d 891, 895 [juvenile proceedings are similar to guardianship proceedings]; *Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155, 164 [juvenile proceeding is a civil action].) Under the plain language of these statutes, the penalty pursuant to Government Code section 70372, subdivision (a)(1), is inapplicable in an adjudication of wardship. At resentencing, the juvenile court shall not impose this penalty.

*In re Magnuson*, 110 Cal. App. 2d 73, 74, 242 P.2d 362, 364, (3rd DCA 1952) [emphasis added].

An order **adjudging a person to be a ward of the juvenile court is not a conviction of crime** ( Welf. & Inst. Code, § 736), and proceedings to have such a wardship declared are not criminal proceedings.

Plaintiff has offered no legal authority that Juvenile Court proceedings result in criminal "convictions."

**Review of the Restitution Order**

Plaintiff provides as Exhibit A, a copy of the Restitution Order by which Defendant-Debtor was ordered in *In The Matter of Cameron Elford, Minor*, California Superior Court, County of Sacramento, No. 134843, to pay $376,200.00 in restitution to Plaintiff.  This order is enforced as a final judgment of a Court for the State of California.[11]  The findings and conclusions of that court to which Collateral Estoppel applies include the following:

A.    The restitution relates to the "grievous injuries [Plaintiff suffered] when he was involved in a head-on traffic accident with [Defendant-Debtor], who was then 17 years old."  Exhibit A, Restitution Order, p. 1:13-25; Dckt. 23.

B.    On August 30 2012, the Placer County District Attorney filed a Juvenile Wardship Petition pursuant to California Welfare and Institutions Code § 602 charging Defendant-Debtor with felony drunk driving in connection with the accident. *Id.*, p. 1:15-18.

C.    In Footnote 1 to the Restitution Order, that court states:

---

[11]  The Restitution Order is enforced in the same manner as a civil judgment.  Welf. and Inst. § 730.6(i), (r).

According to an eyewitness the minor's vehicle was traveling southbound on Roseville Road at approximately 45-50 miles per hour when it crossed the centerline and collided with [Plaintiff's], which was traveling at approximately the same rate of speed. Following the accident, **the minor [Defendant-Debtor] admitted to consuming two shots of hard liquor and seven beers in a one hour period immediately prior to the accident. A passenger and drinking companion estimated that the number of beers consumed by [Defendant-Debtor] was over twice that amount.** The minor was charged with a felony violation of Vehicle Code Section 23153(a) and an enhancement for great bodily injury pursuant to Penal Code Section 12022(a).

*Id.*, p. 1, FN. 1 [emphasis added].

D.     "On June 18, 2013, the minor admitted the allegations." *Id.*, p. 1:18-19.

E.     Defendant-Debtor was committed to serve 180 days in Juvenile Hall, with 90 days suspended pending completing conditions of probation. *Id.*, pp. 1:20-22, 2:1-3.

F.     In November 2013, Plaintiff provided a loss statement seeking $376,290.00 in restitution - consisting of $280,059.00 in medical expenses and $96,231.00 in lost income. *Id.*, p. 2:8-11.

G.     The juvenile court may impose restitution under Welfare and Institutions § 730.6 for losses that are incurred "as a result of" the underlying offense - here felony drunk driving - underlying the offense for which the minor was adjudicated a ward of the court. *Id.* p. 7:1-3.

H.     The Superior Court's judge's now final Restitution Order was filed in *In the Matter of Cameron Elford* on April 25, 2012.

The Superior Court has made a series of express findings concerning the Restitution Order, the conduct of the Defendant-Debtor, and the computation of the restitution amount. The Superior Court Judge also makes it clear that the restitution is ordered based on the felony drunk driving by Defendant-Debtor for which he was adjudged a ward of the court - which is not a criminal conviction.

This court identified a Tenth Circuit Court of Appeals decision, *Colo. Judicial Dep't v. Sweeney (In re Sweeney)*, 492 F.3d 1189 (10th Cir. 2007), which addresses whether the adjudication of someone as a juvenile delinquent or a ward of the would constitute a "criminal conviction" for purposes of 11 U.S.C. § 1328(a)(3). The Tenth Circuit Court of Appeals concluded that it did not constitute a criminal conviction, stating:

Under federal law, juvenile delinquency is defined as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031. We previously

23

have stated that this **definition means that juvenile delinquency is "an adjudication of status--not a criminal conviction."** *United States v. Brian N.,* 900 F.2d 218, 220 (10th Cir. 1990). . .

Section 1328(a)(3) of the bankruptcy code precludes dischargeability of restitution that was "included in a sentence on the debtor's conviction of a crime." CJD argues that dictionary definitions of the word "conviction" illustrate a uniform understanding of "crime" such that Mr. Sweeney "was found guilty of" and "was sentenced for committing the crime of second degree arson." (Aplt.'s Opening Br. at 12.) This contention fundamentally mischaracterizes juvenile delinquency law. As noted above, an **adjudication of juvenile delinquency is not equivalent to a conviction** precisely because § 5031 punishes "violation[s]" of the law that "would have been a crime if committed by an adult," 18 U.S.C. § 5031 (emphasis added), with a classification of "status" as opposed to "criminal conviction." *Brian N.*, 900 F.2d at 220.

We observe that the same holds true under Colorado law, which likewise separates juvenile delinquency from criminal conviction. Under the Colorado Children's Code, a juvenile delinquent is one who has been adjudicated such after having been found "guilty of a delinquent act." Colo. Rev. Stat. § 19-1-103(71) (2006); id. § 19-1-103(2); see C.B. v. People, 122 P.3d 1065, 1066 (Colo. Ct. App. 2005) ("A delinquency adjudication . . . is a special statutory proceeding that is noncriminal in nature."). . . Restitution for delinquent acts is not imposed pursuant to the State's criminal code; the criminal code merely controls enforceability. The federal juvenile delinquency statute makes a similar cross-reference, but that also does not change the provision under which restitution is imposed.
. . .
Thus, the decision of the Bankruptcy Appellate Panel [concluding that restitution ordered pursuant to juvenile delinquency proceedings is dischargeable under 11 U.S.C. § 1328(a)(3)] is AFFIRMED.

*Colo. Judicial Dep't v. Sweeney (In re Sweeney)*, 492 F.3d 1189, 1191, 1192 (10th Cir. 2007) [emphasis added].

Defendant-Debtor's swing at the assertion that an adjudication of a minor as a ward of the court has landed home, with no counter-punch of authorities presented by Plaintiff.

The Restitution Order was not for "restitution. . .included in a sentence on the debtor's conviction of a crime" under California law (the jurisdiction imposing the restitution liability) as required by 11 U.S.C. § 1328(a)(3).

Therefore, the court determines that judgment for the Defendant-Debtor denying Plaintiff relief pursuant to 11 U.S.C. § 1328(a)(3) is proper.

**NO GENUINE DISPUTE AS TO ANY MATERIAL FACTS HAS BEEN PRESENTED BY THE PARTIES**

Upon review of the evidence presented to the court, there are not genuine disputes as to any

1  material facts. The court is presented with a final Restitution Order and a final Amended Judgment

2  on Verdict. Plaintiff has also presented the court with the written admissions by Defendant-Debtor

3  in the State Court Action. Defendant-Debtor's Opposition is based on the law and, through the

4  operation of Collateral Estoppel,  the final Restitution Order and the final Amended Judgment on

5  Verdict issued by the State Court.

6

**Nondischargeability of Debt Based on**
7  **11 U.S.C. § 523(a)(9)**

8      Plaintiff asserts that the obligations owing under the Restitution Order and the Amended

9  Judgment on Verdict are nondischargeable on each of two separate and independent grounds.  The

10  first is 11 U.S.C. § 523(a)(9), which provides that a debt is nondischargeable if it is for damages "for

11  death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if

12  such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or

13  another substance."

14      Thus, for a debt to be nondischargeable under section 523(a)(9), it must have arisen from a

15  death or personal injury and resulted from the debtor's operation of a motor vehicle, vessel or

16  aircraft that was unlawful because the debtor was intoxicated from using alcohol, a drug or another

17  substance.  *See Armstrong v. Oslin* (*In re Oslin*), 2018 Bankr. LEXIS 168 (Bankr. N.D. Okla.

18  Jan. 24, 2018) (action against debtor whose solely owned corporation served alcohol to minor who

19  caused traffic accident injury to plaintiff creditor does not state a claim under 11 U.S.C. § 523(a)(9));

20  *Kinder v. Shade* (*In re Shade*), 2017 Bankr. LEXIS 3524 (Bankr. N.D. Ohio Oct. 4, 2017) (claim

21  against debtor who permitted another person to drive her vehicle while intoxicated causing injury

22  to plaintiff is not excepted from discharge by 11 U.S.C. § 523(a)(9)).

23      The three elements that must be proven under section 523(a)(9) are (1) the existence of a

24  debt for death or personal injury; (2) caused by operation of a motor vehicle, vessel or aircraft; (3)

25  being operated unlawfully under state law due to the debtor's intoxication.  *In re Clampitt*, 499 B.R.

26  640 (Bankr. E.D. Mo. 2013); *In re Pair*, 264 B.R. 680 (Bankr. D. Idaho 2001).  For the debt to be

27  nondischargeable, it is not necessary for the debtor to be charged with driving under the influence.

28  The creditor may establish at trial that the debtor was intoxicated. *Watkins v. Fleisch* (*In re Fleisch*),

543 B.R. 166 (Bankr. M.D. Pa. 2015).

As to this last element, there must be evidence that the Defendant-Debtor was intoxicated at the time of the accident, not merely that the Defendant-Debtor drank some alcohol (or other intoxicating substance). In *Watkins v. Fleisch (In re Fleisch)*, 543 B.R. 166, 172 (M.D. Penn. 2015), the court discussed this intoxication requirement in applying Pennsylvania law:

> But mere evidence that a party was drinking alcoholic beverages is not admissible, unless a degree of intoxication is established to show an unfitness to drive. *Braun v. Target Corp.* 2009 PA Super 206, 983 A.2d 752, 760 (Pa. Super. 2009). In other words, a plaintiff must offer additional evidence other than the fact that the defendant had been drinking before being involved in an accident. Chemical evidence as to intoxication, however, is not required. In the absence of breath analysis or blood alcohol testing, lay testimony may be provided as to the defendant's conduct and appearance. Also, physical evidence of the accident scene may be used to corroborate allegations of intoxication. *Id.* at 760-61.

The Fourth Circuit Court of Appeals followed this analysis, stating in *Whitson v. Middleton*, 898 F.2d 950, 953 (4th Cir. 1990), concluding that the debtor must have been operating the vehicle while legally intoxicated under the laws of the state in which the injury occurred.

On the issue of intoxication, Plaintiff points the court to the Restitution Order and the Amended Judgment on Verdict for the findings of the California Superior Court and jury on that issue.

Additionally, Plaintiff points the court to California Vehicle Code § 23136 which states that it is unlawful for a person under the age of 21 years to drive a vehicle with a blood-alcohol concentration of 0.01 percent or greater, as measured by a preliminary alcohol screening test or other chemical test. Plaintiff also directs the court to California Vehicle Code § 23140 which further states that it is unlawful for a person under the age of 21 years who has 0.05 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

Plaintiff then directs the court to the Response for Admissions in which Defendant-Debtor admitted that he "blew" a 0.082% and 0.078% blood alcohol content from the Breathalyzer test after the collision with Plaintiff's vehicle. Plaintiff then states that since this is greater than the 0.05% permitted under Vehicle Code § 23140, Defendant-Debtor "by any measure, [was] operating a motor vehicle unlawfully under California law due to intoxication." Motion, p. 10:24-26; Dckt. 23.

In asserting these blood alcohol percentages for a minor operating a vehicle dictate that

Defendant-Debtor was "intoxicated," Plaintiff does not provide the court with any statutory or case law authority that California Vehicle Code § 23136 and § 23140 makes a legal determination of "intoxication." Rather, these statutes set a statutory blood alcohol level, without regard to whether the minor was intoxicated, making driving a vehicle by a minor illegal. This difference is shown in California Vehicle Code § 23152 which has two statutory provisions for making illegal the driving of the vehicle.

In § 23152(a) it is "unlawful for a person who is under the influence of any alcoholic beverage to drive a vehicle." This requires a determination that the:

> **intoxicating liquor has so far affected the nervous system, brain, or muscles** of the driver of an automobile as **to impair**, to an appreciable degree, **his ability to operate his car in the manner that an ordinarily prudent and cautious man**, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute."

*People v. Ekstromer*, 71 Cal. App. 239 (1st DCA 1925), quoting *People v. Dingle*, 56 Cal.App. 445 (2nd DCA 1922) [emphasis added]. *See also*, *People v. Cady*, 7 Cal. App. 5th 134, 142 (5th DCA 2016).

This legal standard for a person to be in violation of California Vehicle Code § 23152(a) is consistent with the "due to intoxication" requirement of 11 U.S.C. § 523(a)(9). The statutory unlawful blood alcohol level amounts in Vehicle Code § 23136, § 23140, and § 23152 are statutory standards for the unlawful operation of a vehicle without regard to whether the person is intoxicated.

Plaintiff has not presented the court with any authority that such blood alcohol percentages for minors satisfy the federal law requirement in 11 U.S.C. § 523(a)(9) that the operation was illegal due to "intoxication," but merely some level of alcohol in the person's bloodstream without regard to "intoxication."

**Findings and Conclusions of State Court Judge and Jury, and Admissions Establishing That Defendant-Debtor Was Intoxicated When Operating the Vehicle Involved in the Head-On Collision**

The California Superior Court has issued a Restitution Order and a civil Amended Judgment on Verdict relating to the accident in which Defendant-Debtor's vehicle crashed head-on into Plaintiff's vehicle. In both, there are express findings and conclusions made for which this court

1    must give Full Faith and Credit and apply the Doctrine of Collateral Estoppel.

2        The court begins with the Amended Judgment on Verdict which has been filed in support

3    of the Motion as Exhibit D; Dckt. 27 at 12. This Amended Judgment on Verdict includes the

4    findings of the jury upon which the Amended Judgment is based. These findings of the jury and

5    legal conclusions of the judge include the following as they pertain to Defendant-Debtor:

6      A.    Defendant-Debtor admitted he was intoxicated while operating the motor vehicle,
          and while intoxicated was negligent in causing the collision with Plaintiff's vehicle.
7          Amended Judgement on Verdict, p. 2.

8      B.    Plaintiff's damages caused by Defendant-Debtor's negligence while being
          intoxicated when driving the vehicle has resulted in $2,962,902.77:

9

10          1.    $612,902.77 for Past Medical Expenses, Past Wage Loss, and Future Wage
              Loss;

11          2.    $650,000.00 for Past Non-Economic Loss of Physical pain, mental suffering,
              physical impairment, inconvenience, grief, anxiety, emotional distress and
12              loss of enjoyment of life; and

13          3.    $1,700,000.00 for Future Non-Economic Loss of Physical pain, mental
              suffering, physical impairment, inconvenience, grief, anxiety, emotional
14              distress and loss of enjoyment of life.

15          *Id.*

16      C.    Judgment is entered for $2,962,902.77 for Plaintiff and against Defendant-Debtor.
          *Id.*, p. 4.
17

18        Plaintiff has also provided the court with the Restitution Order in which the California

19    Superior Court Judge made extensive findings and conclusions, which include the following:

20      A.    On August 30, 2012, after the head-on collision with Plaintiff's vehicle, the Placer
          County District Attorney filed a Juvenile Wardship Petition charging Defendant-
21          Debtor with felony drunk driving in connection with the head-on collision with
          Plaintiff's vehicle. Restitution Order, p. 1:15-18; Dckt. 27,
22

23      B.    Defendant-Debtor admitted to consuming two shots of hard liquor and seven beers
          in a one hour period immediately prior to the head-on collision with Plaintiff's
24          vehicle. *Id.*, p. 1:25-26.

25      C.    Defendant-Debtor's passenger and drinking companion estimated that Defendant-
          Debtor had more than twice the amount of beer than admitted by Defendant-Debtor.
26          *Id.*, p. 1:26.

27      D.    Defendant-Debtor admitted the allegations of felony drunk driving. *Id.*, p. 18-19.

28    ///

**Additional Evidence Presented by Plaintiff**

Plaintiff has presented the court with Responses to Requests for Admissions given by Defendant-Debtor in the State Court Action for which the Jury awarded Plaintiff $2,962,902.77 and for which the court entered judgment thereon. These Responses are filed as Exhibit F. Dckt 27. As discussed above, Defendant-Debtor's objection was that these Admissions are "hearsay." These Admissions have been authenticated by Plaintiff's counsel in the State Court Action[12] as the Admissions given by Defendant-Debtor in the State Court Action in response to Plaintiff's Request for Admissions.

The term "hearsay" is defined by the U.S. Supreme Court in Federal Rules of Evidence 801 as a statement made by a declarant other than while testifying at the then current trial or hearing, and such statement is offered as evidence to prove the truth of such statement. Fed. R. Evid. 801(c). However, excluded from this definition are statements by a party opponent, in pertinent part, as follows:

> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:
> . . .
> (2) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
> > (A) was made by the party in an individual or representative capacity;
> >
> > (B) is one the party manifested that it adopted or believed to be true;
> >
> > (C) was made by a person whom the party authorized to make a statement on the subject; .
> >
> > (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> >
> > (E) was made by the party's coconspirator during and in furtherance of the conspiracy.
>
> The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

Fed. R. Evid. 801(d).

---

[12] Declaration, Dckt. 36.

Here, the Response to Admissions are statements made by the Defendant-Debtor in the State Court Action. They are signed by Defendant-Debtor's counsel in the State Court Action and verified under penalty of perjury by the Defendant-Debtor to be true and correct. Exhibit F, p. 6; Dckt. 27. The Admissions are statements made by the Defendant-Debtor, which statements are not hearsay. In the Responses Defendant-Debtor statements/admissions include:

1.  Defendant-Debtor was negligent in causing the collision with Plaintiff's vehicle. Request For Admission 1/Response 1.

2.  Defendant-Debtor's negligence was a substantial factor in causing the harm to Plaintiff. Request For Admission 2/Response 2.

3.  Defendant-Debtor was driving the vehicle under the influence of alcohol at the time of the collision (which collision is the subject of the Restitution Order and the Amended Judgment on Verdict). Request For Admission 7/Response 7.

4.  Defendant-Debtor driving the vehicle while under the influence of alcohol was a substantial factor in causing the collision with Plaintiff's vehicle. Request For Admission 8/Response 8.

5.  Defendant-Debtor consumed beer on the evening before the collision with Plaintiff's vehicle. Requests For Admission 13, 14/Responses 13, 14.

Requests for Admissions, Exhibit E, and Responses to Requests for Admissions, Exhibit F; Dckt. 27.

**Obligations Owed On the Restitution Order
and Amended Judgment on Verdict
Are Nondischarageable Pursuant to 11 U.S.C. § 523(a)(9)**

The evidence presented by Plaintiff establishes that the obligation of Defendant-Debtor damages for personal injury to Plaintiff were caused by the debtor's operation of a motor vehicle which was unlawful because the debtor was intoxicated from using alcohol. The jury in awarding the State Court Judgment and the State Court Judge in issuing the Restitution Order each expressly included a finding as part of such Judgment or Order that Defendant-Debtor was intoxicated. The findings are based upon Defendant-Debtor's admissions that he was intoxicated.

Defendant-Debtor argues that since reference is made to Defendant-Debtor being negligent, there needs to be a further determination that he was intoxicated. First, that Defendant-Debtor was intoxicated is included in the Amended Judgment on the Verdict and the Restitution Order. Second, the reference to negligence is that it was not an intentional tort – there is no finding that the Defendant-Debtor, with malice aforethought, consciously steered his car into the oncoming traffic,

1    sighted in on the front of Plaintiff's car, and then intentionally crashed head-on into Plaintiff's car.

2    The Defendant-Debtor has been afforded his day, multiple times, over the past eight years,

3    in court to contest his being intoxicated when the head-on collision occurred. He did not contest it

4    and admitted it. As shown in the Restitution Order, the Defendant-Debtor's passenger in the vehicle

5    reported that he drank significantly more alcohol than Defendant-Debtor admitted to in those

6    proceedings.

7    Defendant-Debtor tries to weave an argument that his admitting being intoxicated does not

8    mean that the accident was caused by the intoxication, but that it could merely have been his

9    inexperience as a driver. Congress provides in 11 U.S.C. § 523(a)(9) that the obligations will be

10   non-dischargeable if it was caused by the operation of a vehicle which was unlawful because the

11   debtor was intoxicated from alcohol while operating the vehicle. That has been determined - the

12   Defendant-Debtor was intoxicated while operating the vehicle when the head-on collision with

13   Plaintiff's car occurred.

14   As stated in the Restitution Order, Defendant-Debtor "was charged with a felony violation

15   of Vehicle Code Section 23152(a) [which is for driving while intoxicated, not "merely" having a

16   blood alcohol level in excess of 0.08%] and an enhancement for great bodily injury pursuant to

17   Penal Code Section 12022(a) [use of a deadly weapon in commission of a felony]." Restitution

18   Order, FN.1; Dckt. 27. Defendant-Debtor admitted the felony violation and was committed as a

19   ward of the court to 90 days in juvenile hall and probation. Defendant-Debtor admitted in the State

20   Court Action that he was intoxicated while operating the vehicle at the time of the head-on collision

21   with Plaintiff's vehicle which caused the damages that are the subject of the Restitution Order and

22   Amended Judgment.

23   The obligations owed by Defendant-Debtor to Plaintiff under the Restitution Order and the

24   Amended Judgment on Verdict are nondischargeable pursuant to 11 U.S.C. § 523(a)(9).

25   **The Obligations Owed Under the Restitution Order**
     **and Amended Judgment on Verdict are**
26   **Nondischargeable Pursuant to 11 U.S.C. § 1328(a)(4)**

27   Plaintiff also seeks to have the Restitution Order and the Amended Judgment on Verdict

28   determined nondischargeable pursuant to 11 U.S.C. § 1328(a)(4) because the obligations are "for

1  restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious

2  injury by the debtor that caused personal injury to an individual or the death of an individual."

3     It is established that the Restitution Order is from a civil proceeding (not a criminal

4  conviction) and the Amended Judgment on Verdict is a civil judgment.

5     Here, as addressed above, the damages for both the Restitution Order and the Amended

6  Judgment on Verdict are compensatory damages caused by the personal injury to Plaintiff by the

7  Defendant-Debtor.

8     To be nondischargeable, the restitution or damages must be caused by the "willful or

9  malicious injury" to the Plaintiff caused by the Defendant-Debtor.  As noted in 8 Collier on

10  Bankruptcy, 16th Edition, ¶ 1328.02[k] (emphasis added):

11     In addition, the debt must be a result of willful or malicious injury. **This is a lower
       standard than section 523(a)(6),** which requires the debt to be the result of a willful
12     and malicious injury.  However, unlike section 523(a)(6), injuries to property are not
       included. The injury must be a personal injury to an individual or the death of an
13     individual.

14     The term willful and the term malicious have been well developed by the Ninth Circuit Court

15  of Appeals in the context of 11 U.S.C. § 523(a)(6).  Those analyses are applicable here.

16     As discussed by the Ninth Circuit Court of Appeals in *Ormsby v. First Am. Title Co. (In re*

17  *Ormsby)*, 591 F.3d 1199 (9th Cir. 2010):

18     The Supreme Court in *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 118
       S. Ct. 974, 140 L. Ed. 2d 90 (1998), made clear that for section 523(a)(6) to apply,
19     the actor must intend the consequences of the act, not simply the act itself. Id. at 60.
       Both willfulness and maliciousness must be proven to block discharge under section
20     523(a)(6).

21     In this Circuit, " § 523(a)(6)'s willful injury requirement is met only when the
       debtor has a subjective motive to inflict injury or when the debtor believes that injury
22     is substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290
       F.3d 1140, 1142 (9th Cir. 2002). The Debtor is charged with the knowledge of the
23     natural consequences of his actions. *Cablevision Sys. Corp. v. Cohen (In re Cohen)*,
       121 B.R. 267, 271 (Bankr. E.D. N.Y. 1990); see *Su*, 290 F.3d at 1146 ("In addition
24     to what a debtor may admit to knowing, the bankruptcy court may consider
       circumstantial evidence that tends to establish what the debtor must have actually
25     known when taking the injury-producing action.").

26     "A malicious injury involves (1) a wrongful act, (2) done intentionally,
       (3) which necessarily causes injury, and (4) is done without just cause or excuse."
27     *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (internal
       citations  omitted). Malice may be inferred based on the nature of the wrongful act.
28     See *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551,

1    554 (9th Cir. 1991). 7 To infer malice, however, it must first be established that the
conversion was willful. See *Thiara*, 285 B.R. at 434.

2

3    In considering the issues of willful and malicious in the context of driving while intoxicated,

4    the Ninth Circuit held in *In re Adams*, 761 F.2d 1422, 1427 (9th Cir. 1985), that:

5    [w]e hold that the voluntary acts of drinking and driving while intoxicated constitute
conduct sufficiently intentional to support a finding of willfulness and malice, as

6    contemplated by section 523(a)(6) and that this interpretation must be given
retroactive application. *See, e.g., Callejas v. McMahon*, 750 F.2d at 731; *Brown v.*

7    *Marquette Savings and Loan Association*, 686 F.2d at 615. Therefore, debts arising
from liabilities which are incurred as a result of drunk driving, whether such conduct

8    occurred before or after enactment of the 1984 amendment, are nondischargeable.

9    In considering these alternative grounds for relief pursuant to 11 U.S.C. § 1328(c)(4),

10    Congress providing therein that the conduct need only be willful <u>or</u> malicious, this court concludes

11    as follows.

12
     The Conduct of Defendant-Debtor
13   Is Willful For Purposes of 11 U.S.C. § 1328(a)(4)

14    The conduct of Defendant-Debtor in driving while intoxicated was willful as that term is

15    used in 11 U.S.C. § 523(a)(6) as established by the Ninth Circuit Court of Appeals in *In re Adams*,

16    761 F.2d 1422, 1427 (9th Cir. 1985). The nondischargeability provisions of 11 U.S.C. § 1328(a)(4)

17    overlap those of 11 U.S.C. § 523(a)(6), and the Ninth Circuit law is equally applicable here.

18    While there is no showing that there was a subjective intent to harm Plaintiff (no intentional

19    tort), a person choosing to drive while intoxicated necessarily knows that significant harm to the

20    person and property of others, as well as to the intoxicated person him/herself, is substantially

21    certain to result. The injuries to Plaintiff are the natural consequences of Defendant-Debtor

22    choosing to drive while intoxicated.

23    Clearly, not all courts agree with the 1985 ruling of the Ninth Circuit Court of Appeals. The

24    Tenth Circuit concluded in *In Re Compos*, 768 F.2d 1155, 1159 (10th Cir. 1985), that for 11 U.S.C.

25    § 526(a)(6) to apply there must be proof of an intent to injury, not "mere" reckless of driving while

26    intoxicated. *See also Cassidy v. Minihan*, 794 F.2d 340 (8th Cir. 1986) (requiring a showing of

27    intent to harm, not "mere" reckless disregard).

28    Not withstanding the contrary Circuit opinions, there is established law in the Ninth Circuit

1  that driving while intoxicated is willful for purposes of 11 U.S.C. § 523(a)(6), which provides

2  nondischargeablity grounds as Congress created specifically for Chapter 13 cases in 11 U.S.C.

3  § 1328(a)(4).

4

5  The Conduct of Defendant-Debtor is
   Malicious For Purposes of 11 U.S.C. § 1328(a)(4)

6       The conduct of Defendant-Debtor in driving while intoxicated was malicious. It is a

7  wrongful act which is in violation of the law. It was determined in the State Court and admitted

8  therein by Defendant-Debtor that he was intoxicated while operating the vehicle at the time of the

9  head-on collision with Plaintiff's vehicle. This was actual intoxication and not "merely" blowing

10 a blood alcohol level in excess of the small percentage allowed for someone under 21 years of age.

11      After drinking, Defendant-Debtor intentionally got into the vehicle and drove. There is

12 nothing in the Restitution Order, Amended Judgment on Verdict, Requests for Admissions and

13 Responses, or the Exhibits provided by Defendant-Debtor that he did not intend to get into the car

14 and drive. There is nothing showing that Defendant-Debtor's getting into the car and driving was

15 not an intentional act.

16      Defendant-Debtor intentionally driving his vehicle necessarily caused the injury. He did so

17 while intoxicated.

18      Defendant-Debtor offers no just cause or excuse for driving the vehicle while intoxicated and

19 causing the head-on collision with Plaintiff that resulted in Defendant-Debtor becoming a ward of

20 the court for violating California law.

21      Defendant-Debtor's conduct which caused Plaintiff's injuries and the damages relating

22 thereto was malicious.

23      Congress provides in 11 U.S.C. § 1328(a)(4) that obligations based on restitution or damages

24 awarded in a civil action for personal injury of an individual against the debtor as a result of that

25 debtor's willful or malicious conduct is nondischargeable. Here, the Restitution Order and the

26 Amended Judgment are both awarded for the personal injury to Plaintiff caused by Defendant-

27 Debtor's operation of a vehicle while intoxicated. As stated above the Defendant-Debtor's conduct

28 was willful. This court also determines that the Defendant-Debtor's conduct was malicious. Each

1  of these are separate and independent grounds for determination of nondischargeability pursuant to

2  11 U.S.C. § 1328(a)(4).

3      The obligations of Defendant-Debtor to Plaintiff arising under the Restitution Order and the

4  Judgment are nondischargeable pursuant to 11 U.S.C. § 1328(a)(4).

5  **Amount of the Nondischargeable Obligations**

6      The court addressed with the Plaintiff the amount of the obligations that are

7  nondischargeable.  The Restitution Order is for $376,290.00, consisting of $279,969.00 in medical

8  costs and $96,321.00 in lost wages.  Restitution Order, p. 2:8-13; Dckt. 27.  Exhibit B is Plaintiff's

9  Restitution Statement showing that these are for amounts incurred prior to November 4, 2013.  *Id.*

10     The Amended Judgment on the Verdict includes $324,152.77 in past medical expenses and

11 $168,750.00 in past wage loss.  Exhibit B, p. 2; *Id.*  These amounts were determined by the jury in

12 the State Court Action as of October 19, 2015.  *Id.*  Based on the analysis in the Restitution Order

13 of lost wages and the medical expenses included as stated in the Restitution Statement, the

14 obligation owed on the Restitution Order is included in the Amended Judgment on the Verdict.

15     At the hearing on the Motion for Summary Judgment, Plaintiff concurred that the

16 nondischargeable debt be computed on the Amended Judgment on Verdict amount of $2,962,902.77,

17 and all interest, fees and costs recoverable thereon.  This may well be based on the practical

18 recovery of moneys from this debtor.

19     Therefore, the court determines that the aggregate amount owing on the Restitution Order

20 and the Amended Judgment on Verdict is the total amount as computed on the Amended Judgment

21 on Verdict.

22             **GRANTING OF SUMMARY JUDGMENT FOR PLAINTIFF IN PART**
                                      **AND FOR**
23                         **DEFENDANT-DEBTOR IN PART**

24     For the grounds as stated above in this Memorandum Opinion and Decision, the court grants

25 the motion and will enter judgment for David Schoonover, the Plaintiff, and against Cameron Elford,

26 the Defendant-Debtor determining that:

27     a.     the Amended Judgment on Verdict for $2,962,902.77  ("Amended Judgment on
              Verdict") in *David Schoonover et al. v. Cameron Elford and Lisa Pashanee*,
28            California Superior Court Case, County of Sacramento, No. 34-2012-00131228,

1    ("State Court Action"); and

2    b.    the order for restitution in the amount of $376,200.00 ("Restitution Order") in *In*
3          *Matter of Cameron Elford*, Minor, California Superior Court Juvenile Case, County
          of Sacramento, No. 132824, ("Juvenile Case"),

4    and the obligations thereunder are nondischargeable pursuant to 11 U.S.C. § 523(a)(9) and
5    11 U.S.C. § 1328(a)(4) as separate and independent grounds for the Amended Judgment on
     Verdict and the Restitution Order, and each of them.

6    The court determining that there are no genuine disputes as to any material facts concerning

7    the issues relating to there not being restitution ordered as part of a criminal conviction, the court

8    grants judgment for Cameron Elford, the Defendant-Debtor, and against David Schoonover, the

9    Plaintiff denying any relief requested pursuant to 11 U.S.C. § 1328(a)(3).

10    The court's judgment also determines the amount of the nondischargeable debt to be the

11    amount stated in the Amended Judgment on the Verdict, $2,962,902.77, plus all interest, fees, costs,

12    and expenses recoverable as part of the Amended Judgment on the Verdict, with both the Restitution

13    Order and Amended Judgment enforceable as nondischargeable debts, with the aggregate amount

14    recoverable on the nondischargeable debts not to exceed the total amount that may be recovered on

15    the Amended Judgment on the Verdict.

16    Finally, that Plaintiff, as the prevailing party, may seek the recovery of attorney's fees and

17    costs as permitted under applicable law as provided in Federal Rule of Bankruptcy Procedure 7054,

18    which incorporates provisions of Federal Rule of Civil Procedure 54.

19    The court shall enter a separate order granting the relief above.

20    **Dated:** August 24, 2020                    **By the Court**

21

22

23

24    Ronald H. Sargis, Judge
      United States Bankruptcy Court

25

26

27

28

36

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) / Defendant-Debtor(s) | Attorney for the Debtor(s) / Defendant-**Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | Barry H. Spitzer, Esq.<br>980 9th Street, Ste. 380<br>Sacramento, CA 95814 |